UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:10-cr-00044-SEB-DLP-1 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (COMPASSIONATE RELEASE) |
| JUSTIN SMITH | |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:10-cr-00044-SEB-DLP |
| | ) | |
| JUSTIN SMITH, | ) -1 | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Justin Smith has filed a motion seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkt. 62. For the reasons explained below, his motion is **DENIED**.

**I.   Background**

In 2011, Mr. Smith plead guilty to two counts of robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951(a) (Counts 1 and 3); and one count of brandishing a firearm in connection with a crime of violence (Count 2), in violation of 18 U.S.C.§ 924(c). Dkt. 32.

On November 20, 2009, Mr. Smith entered a Village Pantry in Indianapolis, Indiana, brandished a pistol, and demanded money from the clerk. Dkt. 29 at 1. Mr. Smith obtained fifty dollars and left the store. *Id.* Later the same day, Mr. Smith entered a Hardee's restaurant in Indianapolis, pointed a handgun at an employee, and demanded money. *Id.* at 1–2. Mr. Smith's attention was then drawn to the manager and pointed the gun at the manager. *Id.* at 2. The manager then opened the register and removed thirty dollars. *Id.* Mr. Smith took the thirty dollars and left the store. *Id.* On January 14, 2010, Mr. Smith was taken into custody and was interviewed by an

Indianapolis Metropolitan Police Department Detective. *Id.* Mr. Smith admitted to committing nine additional robberies in the Indianapolis area. *Id.* at 2–3.

Mr. Smith was originally charged with two counts of violating § 924(c), and the United States agreed to dismiss the second charge under § 924(c) (Count 4) as part of a plea agreement. Dkt. 23. If the United States had not dismissed the second § 924(c) charge and Mr. Smith had been convicted of both § 924(c) counts, under the law as it existed at the time, the second violation would have added an additional mandatory minimum sentence of 25 years consecutive to all other counts. *See* 18 U.S.C. § 924(c) (eff. Oct. 6, 2006, to Dec. 20, 2018). Since that time, § 924(c)(1) has been amended, although the amended provisions do not apply retroactively. *See* 18 U.S.C. § 924(c)(1) (eff. Dec. 21, 2018). If Mr. Smith were sentenced today, the mandatory minimum sentence for the two § 924(c) counts would be 7 years for each count, and he therefore would face a mandatory minimum sentence 18 years shorter than the one he faced at the time of his plea agreement.

On Counts 1 and 3, Mr. Smith faced a guidelines sentencing range of 70 to 87 months followed by 84 months on Count 2. Dkt. 57 at 73–74. However, in the plea agreement, the parties agreed to a total term of between 25 and 30 years of imprisonment. Dkt. 23 at 3. Pursuant to the terms of a plea agreement, the Court sentenced Mr. Smith to 324 months of imprisonment followed by 5 years of supervised release. Dkt. 32 at 2–3. The Bureau of Prisons ("BOP") currently reports Mr. Smith's anticipated release date (with good-conduct time included) as August 23, 2033. https://www.bop.gov/inmateloc/ (last visited April 9, 2024).

Mr. Smith has filed a second motion for compassionate release *pro se*. Dkt. 62. Mr. Smith argues that he establishes extraordinary and compelling reasons for compassionate release because (1) he wishes to be home to provide care for his elderly and ailing mother; and (2) a change in the

3

law has produced a disparity between the sentence he is serving and the sentence he might receive today. Dkt. 62 at 1–2. The United States has filed opposition to the motion, dkt. 68, and Mr. Smith filed a reply, dkt. 70. The motion is now ripe for the Court's consideration.

## II.     Discussion

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). On this point, the United States Sentencing Commission recently amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023). The Court has considered said amendments while adjudicating Defendant's motion, as appropriate.

Mr. Smith first argues that he is needed at home to provide care for his mother who suffers from a multitude of medical issues and has been given six months to two years to live. Dkt. 62 at 1. He states that she is currently living with her brother-in-law who also has medical issues. *Id.* Mr. Smith submitted a letter from his mother's physician stating that she suffers from chronic

4

hypoxic respiratory failure and chronic obstructive pulmonary disease, and coronary and renal dysfunction. Dkt. 72 at 1. He states that she is oxygen dependent and has "a prognosis in the timeframe of weeks to months." *Id.* The physician also states she is not currently in hospice care but is eligible for hospice. *Id.*

Under the recently amended United States Sentencing Guidelines, the Court may find an extraordinary and compelling reason for release due to "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G § 1B1.13(b)(3)(C). Mr. Smith, however, has not demonstrated that he is the only caregiver available for his mother. He states that the person she is living with has his own medical issues, but he does not claim that he is incapacitated or otherwise unable to provide care. Though the Court is sympathetic to the difficulty of having a parent with serious medical concerns, having an ailing parent or other loved one is common among inmates, not extraordinary. For this reason, the Court finds that Mr. Smith has not met his burden to show that his family circumstances constitute an extraordinary and compelling reason for his release whether considered alone or in combination with any other factor.

Mr. Smith next contends that the disparity between the sentence he received and the sentence he might receive if he was sentenced today establishes an extraordinary and compelling reason to release him. Specifically, he argues that he would be subject to a much shorter mandatory minimum sentence if sentenced today due to changes to the mandatory minimum sentences for 924(c) offenses. Dkt. 70 at 3.

For several years, the Seventh Circuit has repeatedly affirmed its conclusion that non-retroactive statutory changes and new judicial decisions are not extraordinary and compelling reasons for granting compassionate release, whether considered alone or in combination with any

other factors. *See United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) (holding that non-retroactive change to statutory mandatory minimum sentence was not extraordinary and compelling reason for relief under § 3582(c)(1)(A)(i) and that district court cannot consider such a change, whether alone or in combination with any other factor, when determining whether defendant has established extraordinary and compelling reasons potentially warranting a sentence reduction). As summarized by the Seventh Circuit:

> When deciding whether "extraordinary and compelling reasons", 18 U.S.C. § 3582(c)(1)(A)(i), justify a prisoner's compassionate release, judges must not rely on non-retroactive statutory changes or new judicial decisions.... *There's nothing "extraordinary" about new statutes or caselaw*, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255.

*United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) (emphasis added; cleaned up); *see also United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023) (quoting *United States v. Brock*, 39 F.4th 462, 466 (7th Cir. 2022) ("Judicial decisions, whether characterized as announcing new law or otherwise, cannot alone amount to an extraordinary and compelling circumstance allowing for a sentence reduction")). Under the *Thacker* line of cases, any potential sentencing disparity clearly does not qualify as an extraordinary and compelling reason potentially warranting a sentence reduction, and the Court would abuse its discretion were it to find otherwise.

The Court recognizes that, effective November 1, 2023, the United States Sentencing Commission amended the Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (last visited April 9, 2024). One such new circumstance is related to defendants who received an "unusually long sentence":

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

The *Thacker* line of cases can be read to hold that the statutory definition of "extraordinary" does not extend to law changes, which means there is a question about whether the Sentencing Commission exceeded its authority when it added this item to the list of potentially extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A)(i). *See United States v. LaBonte*, 520 U.S. 751, 757 (1997) ("Broad as [the Commission's] discretion may be, however, it must bow to the specific directives of Congress."). The Court need not, however, reach that question in Mr. Smith's case because—even if the Commission was within its authority to adopt § 1B1.13(b)(6)—he has not shown any change would result in a "gross disparity" between the sentence he is serving and the sentence he would receive today.

Mr. Smith agreed to a sentence of 25 to 30 years in his plea agreement and the Court sentenced him accordingly. Mr. Smtih argues that lower exposure would result in a stronger plea bargaining position, however, his argument that such a position would result in a better outcome for him is entirely speculative. It is clear from the record that Mr. Smith's plea agreement was the result of intentional charging decisions by the Government intended to produce what it believed to be the proper sentence for Mr. Smith. There was significant evidence that Mr. Smith engaged in multiple robberies for which he was not charged. Had the Government pursued charges for each of these criminal acts, Mr, Smith would have faced a mandatory minimum sentence of 425 years. Dkt. 57 at 81. Instead, as the Government stated at sentence, it "felt that this range, this 25 to 30

years, would be reasonable in this case." *Id.* at 82. In fact, Mr. Smith conceded at the sentencing hearing that the Government could have pursued an even greater number of 924(c) charges and was thankful that they chose not to do so. *Id.* at 64, 74–75.[1]

Mr. Smith's claim that he would face a lower sentence today is entirely speculative and counter to the record. His challenge to his sentence focuses solely on the lower mandatory minimums that would be applied to the charges he actually faced and the effects of the minimum sentence in plea negotiations, but his negotiating position would, in fact, be significantly affected by the charges the Government chooses to bring. Given the present-day sentencing scheme for 924(c) convictions, Government may have chosen to bring many additional charges in order to achieve the 25 to 30 year sentence result they originally sought. The Court will not speculate as to what charges would have been brought and how plea negotiations would have progressed had the current sentencing scheme been in effect. For these reasons, the Court finds that Mr. Smith has not carried his burden to show that that he might receive a lower sentence if sentenced today and has therefore failed to establish an extraordinary and compelling reason to release him, whether considered alone or together with any other reason.

Even if the Court were to assume that Mr. Smith had established an extraordinary and compelling reason, however, the Court would nevertheless find that Mr. Smith is not entitled to compassionate release because the sentencing factors under 18 U.S.C. § 3553 do not weigh in his

---

[1] Specifically, defense counsel stated at the hearing:
> With the consecutive nature of the 924(c)s, they could have charged four or five of these and been beyond life very, very easily without any trouble whatsoever; but they showed compassion, and I'm thankful to the U.S. Attorney for that. It's charged the way it is, and he's going to have some of his life at the end of all this if the Court accepts this plea agreement. . . . In this case, had the government wanted to, they could have gotten a sentence in excess of 700 years without a whole lot of trouble.

Dkt. 57 at 64, 74–75.

8

favor.[2] Mr. Smith engaged in a spree of at least eleven armed robberies within eight months, endangering employees of businesses throughout the Indianapolis area. His criminal history includes a conviction for criminal recklessness in which Mr. Smith shot and killed a person. Dkt. 57 at 88. His record further indicates at least one incident in which he fired a gun at another person. *Id.* Further, Mr. Smith is currently scheduled to be released in August 2033. To release him now would be a substantial, and unwarranted, reduction in his sentence.

Moreover, the Court notes that Defendants who commit robberies are more likely to recidivate than defendants who commit other violent felonies. United States Sentencing Commission, *Recidivism Among Federal Violent Offenders* 16, 27 (Jan. 2019) ("Violent offenders recidivated at a higher rate than non-violent offenders in every age group at the time of release from prison, and the gap between the two groups widens as age at release increases. . . . Robbery offenders recidivated at a higher rate, more quickly, and for more serious offenses than did the other . . . violent instant offenders."). This pattern holds true even as defendants age: "Recidivism rates for robbery offenders increased until reaching age 50 at the time of release (rising from 66.2% for those released under the age of 26 to 72.2% for those released at age 41 through 50."). *Id.* at 27. As Mr. Smith is 41 years old, this factor together counsels against Mr. Smith's release. https://www.bop.gov/inmateloc/ (last visited April 9, 2024).

---

[2] These factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

In light of these considerations, the Court finds that releasing Mr. Smith early would not: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; afford adequate deterrence to criminal conduct; or protect the public from further crimes. *See United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("[A]ll a district judge need do is provide a sufficient reason for [denying relief under § 3582(c)(1)]. One good reason for denying a motion . . . is enough; more would be otiose.").

### III.   Conclusion

For the reasons stated above, Mr. Smith's motion for compassionate release, dkt. [62], is **denied**.

**IT IS SO ORDERED.**

Date: 4/11/2024

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

Justin Smith
Register Number: 09497-028
FCI Edgefield
Federal Correctional Institution
P.O. Box 725
Edgefield, SC 29824